### State of Vermont v. Jean Marc Roberge

[582 A.2d 142]

No. 87-111

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed August 24, 1990

*Robin B. Haffner*, Orleans County Deputy State's Attorney, Newport, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, *David Williams*, Drug Defense Unit, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant appeals his conviction, following a jury trial, of three motor vehicle violations: operating a motor vehicle with a suspended license in violation of 23 V.S.A. § 674, careless and negligent operation of a motor vehicle in violation of 23 V.S.A. § 1091(a), and attempting to elude a police officer in violation of 23 V.S.A. § 1133. We affirm.

On appeal, defendant argues that he was denied due process because the jury was not sworn until after the prosecution rested and was discharged before it announced a unanimous verdict on each of the three counts. Defendant also argues that the State presented insufficient evidence at trial to prove beyond a reasonable doubt that he operated his vehicle carelessly and negligently.

## I.

After the State rested and during a jury recess, the prosecutor discovered that the court had not sworn the jury that morning when the trial began. The court swore them upon their return from recess. Defense counsel explicitly declined to object to the late swearing, and defendant personally remained silent. There is no evidence or allegation that the jurors disregarded their obligations under the oath for criminal trials, or of prejudice to the defendant because of the late swearing.

■■ We have held in a civil case that a party may waive the right to raise the question of an improperly sworn or unsworn jury on appeal either expressly or by proceeding with the trial with knowledge of the fact. *B & P Rambler & Sports Car Center v. Dawson*, 126 Vt. 392, 393, 233 A.2d 50, 51 (1967). We now hold

that, absent an objection or a showing of prejudice by the delay in swearing, there is no reversible error where a jury is sworn before deliberations in a criminal case. See, e.g., *Cooper v. Campbell*, 597 F.2d 628, 629 (8th Cir.) (jury sworn after opening statements of both counsel did not prejudice defendant's right to a jury trial, fair trial, or due process), *cert. denied*, 444 U.S. 852 (1979); *United States v. Hopkins*, 458 F.2d 1353, 1354 (5th Cir. 1972) (harmless error where jury sworn after government's case-in-chief, no prejudice shown, and no objection made to late swearing).* This ruling does not imply

> that the oath is unimportant or a mere formality. To the contrary, the juror's oath is an essential element of the constitutional guarantee to a trial by an "impartial" jury. And if the oath were not given at all we would have no hesitation in finding reversible error even absent any showing of actual prejudice. Indeed, in the normal course of affairs, the oath must be given at the outset of the proceedings.

*State v. Godfrey*, 136 Ariz. 471, 473, 666 P.2d 1080, 1082 (1983).

## II.

The jury retired to deliberate after being instructed on each of the three counts. When the jury returned, the court asked the foreman for "the verdict." The response was "Guilty, your Honor." Both prosecution and defense declined to poll the jury, whereupon the court thanked and excused the jury. The jury was outside the courtroom when the prosecutor informed the court that a verdict had not been delivered on each of the three counts. The court immediately called the jurors back. Once the jury reassembled, the court inquired as to the verdict on each

---

* Some jurisdictions go so far as to say that objection to a late swearing is immaterial, though we need not decide so here. See, e.g., *State v. Apodaca*, 105 N.M. 650, 654, 735 P.2d 1156, 1160 (1987) (complete failure to swear a jury cannot be waived and conviction thereby is a nullity, but where jury was sworn during trial prior to deliberations, reversal of conviction not warranted in absence of prejudice even though defendant moved for mistrial at time of swearing); *State v. Godfrey*, 136 Ariz. 471, 473, 666 P.2d 1080, 1081–82 (1983) (conviction by unsworn jury a nullity, but where jury sworn five minutes into deliberations, no reversal of conviction warranted in absence of prejudice despite motion for mistrial at time of swearing).

count, and the foreman replied "Guilty" for each one. The court then polled the jury.

■ Defendant did not object to the recall of the jury. Therefore, our inquiry is limited to whether the alleged due process violation constitutes plain error. *State v. Gilman*, 145 Vt. 84, 88, 483 A.2d 598, 600 (1984); V.R.Cr.P. 52(b). To rise to the level of plain error, the "error must be obvious and strike at the very heart of defendant's constitutional rights or result in a miscarriage of justice if we were to fail to recognize it." *State v. Turner*, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985).

The general rule is that a jury may not be reassembled after discharge to amend a verdict. While some states adopt a strict "bright line" test, others have allowed the amended verdict, under limited circumstances, using various guidelines or tests to ensure the integrity of the verdict. Compare *Perryman v. State*, 102 Tex. Crim. 531, 278 S.W. 439 (1925) (jury could not amend verdict where foreman asked judge to let jury reconsider almost immediately after rendering verdict); *Cook v. State*, 60 Ala. 39 (1877) (jury could not be reassembled to render verdict in presence of prisoner five minutes after rendered in his absence even though the two jurors who had left courtroom swore they had conversed with no one), with *Summers v. United States*, 11 F.2d 583 (4th Cir. 1926) (allowed amended verdict, distinguishing merely formal discharge from discharge in fact); *Levells v. State*, 32 Ark. 585 (1877) (jury could be recalled to specify on which of two counts a verdict was entered). Vermont has been in the latter category since 1860.

In *Montgomery v. Maynard*, 33 Vt. 450 (1860), the jury foreman mistakenly filled in the form finding for the defendant, rather than plaintiff, as the jury had intended. After discharge, eleven of the jury members met in the deliberation room, while one went to his hotel. The only conversation this juror had was with the tavern keeper, who asked what the verdict was, and was told it was for the plaintiff. Plaintiff's lawyer informed the court of a possible mistake only five minutes after the jury's discharge, whereupon the court reassembled the jury. The court directed them to retire and correct the verdict if it were not already as they had intended. The jury corrected the ver-

dict and delivered it to the court for the plaintiff. On appeal, this Court held that there appeared to be no unfairness or injury by the course of action pursued. *Id.* at 456.

On the other hand, in *Hopkinson's Administratrix v. Stocker*, 116 Vt. 98, 70 A.2d 587 (1950) (reported as *Kennedy v. Stocker* in 70 A.2d), this Court remanded for new trial rather than allow a verdict to be amended to correct an arithmetic mistake which resulted in an award of $5000.00 instead of the intended $500.00. The jury was reassembled six days after the original verdict. This Court held that the jury action was in correction of the original verdict, rather than an impeachment of it. *Id.* at 102, 70 A.2d at 590. However, even though there was no suspicion of any unfair practice, the Court held that the opportunity afforded for the jurors to be influenced during the six day period required a new trial. *Id.* at 103, 70 A.2d at 590.

In the instant case, (1) there is no allegation of impropriety or tampering, and practically no opportunity for discussion with or influence by outsiders; and (2) the jury did not retire to reconsider the issues, but merely answered the questions that ought to have been put to it moments before. There was no miscarriage of justice and no plain error.

## III.

The requisite level of culpability under 23 V.S.A. § 1091(a) is "ordinary negligence such as would impose civil liability." *State v. LaBonte*, 120 Vt. 465, 468, 144 A.2d 792, 794 (1958). "[U]nder § 1091(a), a conviction will be supported if defendant's conduct is unreasonable; it need not be proven reckless." *State v. Stevens*, 150 Vt. 251, 252, 552 A.2d 410, 411 (1988). The jury found that defendant attempted to elude the police officer, and heard testimony that the chase exceeded 50 m.p.h. through commercial and residential areas. Two witnesses testified that defendant's car was moving so fast that it lost traction while negotiating curves in the road, and there was no evidence of conditions which might explain this (such as wet roads).

It was for the jury to decide which evidence to believe, and what weight to give it. It was "for the jury to say both how

the [defendant] drove and how the ordinary prudent man would have driven in the same circumstances." *LaBonte*, 120 Vt. at 469, 144 A.2d at 795. Viewing the evidence in the light most favorable to the State, we cannot say that a reasonable jury could not find lack of ordinary care beyond a reasonable doubt.

*Affirmed.*